UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN VINCENT CHILDS,

    Plaintiff,

v.

RYAN NEIGHBORS,

    Defendant.

Case No. 20-13094
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND DISMISS [30] AND MOTION TO STRIKE OR TO DISMISS [35] AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [31] AND MOTION TO STRIKE [35]**

Glenn Childs says that mail carriers for the United States Postal Service misdelivered documents for a prior lawsuit, which contributed to that suit being dismissed. Childs believes that he had good chance to recover $300,000 in that prior suit. So Childs filed this lawsuit seeking to recover $300,000 from the postal service and a postal-service employee.

Here is what happened.

In 2016, Childs sued his former employer, Guardian Guard Services, and others. Childs alleged that Guardian had discriminated against him on the basis of race and disability. *See Childs v. Guardian Alarm*, No. 16-14167, slip op. at 1–2 (E.D. Mich. Sept. 11, 2019). It appears that service was an issue and that two

defendants were never served. *See id.* at 3–4 & n.9. In time, the parties agreed to dismiss the case. *See id.* at 4.

A few months later, Childs moved to reopen the employment-discrimination case, asserting that his mail had been tampered with. *See Childs*, No. 16-14167, slip op. at 4. Apparently, the mail consisted of court documents, including service documents. (*See* ECF No. 1, PageID.7; ECF No. 6, PageID.32.) The request to reopen was denied because Childs had initially filed the suit with only two days left on the statute-of-limitations clock, and those two days elapsed after the stipulated dismissal. *See Childs*, No. 16-14167, slip op. at 6–7.

Childs then filed a complaint or claim with the United States Postal Service. Turns out, there had been a misdelivery. A local post office sent Childs a letter stating that "the carrier obtained a signature from an unknown person that shouldn't have signed for it." (ECF No. 6, PageID.34; *see also id.* at PageID.35 ("The carrier failed to adher[e] to the restricted delivery request.").) The post office provided Childs a refund of $23.08. (ECF No. 6, PageID.34.) It appears that Childs continued to seek relief from the postal service, and eventually his claim was adjudicated by Ryan Neighbors, a Tort Claims Examiner for the postal service. (*See* ECF No. 6, PageID.30.)

In November 2020, Childs filed this lawsuit. Childs alleged that postal carriers lost or misdelivered his service documents and then created electronic records showing proper delivery. (ECF No. 1, PageID.5.) As defendants, Childs named the United States of America, the United States Postal Service, and

Neighbors. Childs complained that Neighbors would not disclose the name of the postal carrier or carriers who misdelivered the mail, which, in turn, prevented him from filing a complaint against the carriers. (ECF No. 1, PageID.5.) As damages, Childs sought the amount he thought he would recover in the discrimination suit against Guardian. (*Id.*)

In a prior decision, the Court dismissed the United States of America and the United States Postal Service, finding that they were entitled to sovereign immunity. *Childs v. United States*, No. 20-13094, 2021 WL 51389 (E.D. Mich. Jan. 6, 2021) *available at* (ECF No. 5).

But an individual-capacity claim against Neighbors remained. The case proceeded, and Neighbors did not answer Childs' complaint. And, eventually, Childs sought and obtained a clerk's default against Neighbors. (ECF No. 26.)

Four motions are now pending. Childs moves for a default judgment while Neighbors moves to set aside the default. (ECF Nos. 30, 31.) Neighbors' motion goes one step further: he argues that Childs' claims should be dismissed. (ECF No. 30, PageID.125–126.) In response, Childs moved to strike Neighbors' motion. (ECF No. 34.) Childs also filed a proposed, second-amended complaint, which Neighbors has moved to strike. (ECF No. 35.) The Court addresses these four motions below. And as explained below, the default will be set aside, and Childs' complaint will be dismissed.

3

I.

The Court begins with Neighbors' motion to set aside the clerk's default against him.

A.

Here is how that motion came to be.

In November 2021, Childs tried to serve Neighbors by "restrictive delivery" with "signature confirmation." (ECF No. 15, PageID.72.) "Restrictive delivery" permits the sender "to direct delivery only to the addressee or the addressee's authorized agent." What is Restricted Delivery, United States Postal Service, https://perma.cc/23V6-CTRJ. Childs' restricted mailing was addressed to "Ryan Neighbors" at the postal service's National Tort Center in Missouri.

The next month, Childs docketed proof of service, including a copy of the returned, restricted-delivery card. But there was no name written in the box for "Received by (Printed Name)" and the signature on the card was illegible. (ECF No. 15, PageID.72.) And a few days later, the United States, through a third-party statement of interest, informed the Court that Neighbors had not worked at the National Tort Center since May 2020, and so Neighbors could not have signed the restricted-delivery card. (ECF No. 17, PageID.75.)

Given the illegible signature and the Government's statement, the Court was skeptical that Neighbors had been properly served. So it set a hearing to get to the bottom of things. Neighbors—who apparently had no knowledge of this case (ECF

4

No. 30-3, PageID.149)—did not attend. But the Assistant United States Attorney who had filed the statement of interest observed the proceedings.

At the hearing, Childs provided a second proof of service on Neighbors. Like the first one, this second proof of service indicated that Childs sent documents by "restricted delivery" to "Ryan Neighbors" at the National Tort Center in Missouri. (ECF No. 21, PageID.86.) But unlike the earlier proof of service, the restricted-delivery card contained a legible signature and printed name: Carrie Fezette. (ECF No. 21, PageID.86.) Following the hearing, the Court indicated, "[Childs] provided additional information to support service of process on [Neighbors]. The information provided is not necessarily inconsistent with the Statement of Interest by the United States of America."

This case then had no activity for months.

So in August 2022, the Court issued a show-cause order. In particular, the Court ordered Childs to explain why his case should not be dismissed for his failure to prosecute it. (ECF No. 24, PageID.94.) According to Neighbors, the day of the Court's show-cause order is the first he had heard of this case. (*See* ECF No. 30-3, PageID.149.) The United States Attorney who had been keeping an eye on it for the government had notified Neighbors of the case. (*See id.*)

The Court's show cause prompted Childs to take action. Within days, Childs asked the Clerk of Court to grant him a default against Neighbors. (ECF No. 25.) As Neighbors had still not appeared in the case, the Clerk obliged. (ECF No. 26.)

5

About a week later, the government attorney who had been tracking this case made a "limited appearance" for Neighbors. The attorney appeared on behalf of Neighbors "for the limited purpose of contesting the Court's jurisdiction." (ECF No. 29, PageID.104.) "By filing this limited appearance," counsel explained, "Neighbors does not waive any defenses, including insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5)." (*Id.*)

Through counsel, Neighbors filed a motion to set aside the default (and further, to dismiss Childs' claims against him). (ECF No. 30.) According to Neighbors, the default should be set aside because he was never properly served. (ECF No. 30, PageID.119.) And even if he was served, Neighbors says that other considerations, including his meritorious defense, counsel toward setting aside the default. (ECF No. 30, PageID.124.)

**B.**

In the most technical sense, Neighbors is correct: he has not been properly served.

Several methods of service are easy to rule out. Federal Rule of Civil Procedure 4(i) says in relevant part, "To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf . . . a party must . . . serve the officer or employee under Rule 4(e), (f), or (g)." Two of those three—Rule 4(f) (a person in a foreign country) and Rule 4(g) (a minor or incompetent person)—do not apply here. So Childs is left with Rule 4(e), which itself provides for four methods of service. It

is plain that Childs did not serve Neighbors in two of the ways provided by Rule 4(e): he neither personally delivered court papers to Neighbors nor left a copy of the papers with someone who resided at Neighbors' "usual place of abode." A third option—"delivering a copy . . . to an agent authorized by appointment or by law to receive service of process"—also dead-ends. Neighbors says he did not authorize anyone to receive service of process on his behalf. (ECF No. 30-3, PageID.149.) And Frazette says she was not authorized by Neighbors to accept service. (ECF No. 30-2, PageID.145.) So that leaves the fourth option provided by Rule 4(e): serving in accordance with Michigan or Missouri law. *See* Fed. R. Civ. P. 4(e)(1).

Take Michigan's service rules first. Things start off well enough for Childs: he used restricted delivery and Michigan law allows for service by "registered or certified mail, return receipt requested, and delivery restricted to addressee," Mich. Ct. R. 2.105(A)(2). But that service rule goes on to say, "Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2)." Mich. Ct. R. 2.105(A)(2). Here, Childs does not explain how Neighbors acknowledged service. And even if Neighbors somehow acknowledged service, Childs has not provided a copy of the return receipt "signed by" Neighbors. In fact, Neighbors did not work at the National Tort Center when Childs sent service documents there, so Neighbors could not have signed the return receipt.

7

Michigan provides two other ways of serving individuals: personally or through an agent. Mich. Ct. R. 2.105(A)(1), (B)(1), (I). Childs did not use these means of serving Neighbors.

So that leaves Missouri. Like Michigan, Missouri permits service on individuals by mail. But under that option, Childs needed to include with the service papers a "notice and acknowledgment" that looks like the examples provided by the rules. *See* Mo. Stat. § 506.150.4; Mo. S. Ct. R. 54.16. And the examples strongly suggest that the person who must sign the acknowledgment is the defendant or a person who the defendant has authorized to sign on his behalf. *See* Mo. Stat. § 506.150 ("If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority."); Mo. Civ. P. Form 4B (same); Mo. Civ. P. Form 4C (same). And, again, Neighbors did not sign any acknowledgment because he did not work at the National Tort Center when the service documents arrived there, and Neighbors did not authorize anyone to sign for him, either.

Aside from mail, Missouri permits service by delivering papers personally or to an agent or by leaving papers with someone living at the defendant's "usual place of abode." Mo. Ann. Stat. § 506.150.1; Mo. S. Ct. R. 54.13. Childs has not pursued any of these options.

Thus, all routes considered, Neighbors has not been served.

8

## C.

But that is only true in the most technical sense; in every other sense, Neighbors has been served. To start, Neighbors was informed of this suit over six months ago. (ECF No. 30-3, PageID.149.) And since then, Neighbors has appeared (albeit in limited fashion) (ECF No. 29), filed an affidavit (ECF No. 30-3), and filed a motion to set aside the default and to dismiss this case (ECF No. 30). Perhaps if Neighbors had merely contested jurisdiction or service, and only sought dismissal under Rule 12(b)(1) or 12(b)(5), the Court would not find service effectuated. But Neighbors acknowledges that "dismissal under Rule 12(b)(5) would be without prejudice" and so he "asks the Court to evaluate the grounds for dismissal with prejudice" that he has provided. (ECF No. 30, PageID.126.) These grounds include merits-based arguments. (ECF No. 30, PageID.127–138 (asserting no *Bivens* cause of action and qualified immunity).) Indeed, Neighbors asks that "the claims against him be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) *and 12(b)(6)*." (ECF No. 30, PageID.106 (emphasis added).) This is all done through representation by counsel as this Court's local rules do not permit the type of "limited appearance" being asserted by Neighbors. *See* E.D. Mich. LR 83.25.

Thus, it would be unfair to Childs to consider Neighbors' merits-based arguments while maintaining that Neighbors has not been served. Accordingly, the Court will deem Neighbors served and consider his merits-based arguments for dismissal. *See Rosenthal v. Jezioro*, No. 2:08-CV-81, 2008 WL 4900563, at *3 (N.D.W. Va. Nov. 13, 2008) ("[G]iven that the plaintiff is proceeding pro se, service

9

was attempted in good faith, each of the defendants has timely notice of the action, and the defendants can demonstrate no prejudice, it would appear to be waste of time and resources to quash service and delay the progress of this action for a period of time, just to be back at this point some time in the future."); *Podlacha v. Dobrovlny*, No. 20-CV-01801, 2021 WL 1105362, at *2 (D. Colo. Mar. 23, 2021) (same).

* * *

In short, the Court will grant Neighbors' motion to set aside the default because he was not served in accordance with the rules governing service; but given Neighbors' appearance and request to dismiss this case on the merits, the Court will deem Neighbors served.

## II.

The Court thus turns to the merits and Neighbors' motion to dismiss. (ECF No. 30.)

Childs says that Neighbors committed a number of wrongful acts. He accuses Neighbors of concealing the identity of the mail carrier (or carriers) who misdelivered his court papers in the employment case. (ECF No. 6, PageID.24.) And, says Childs, Neighbors further concealed the carrier's violations of two statutes criminalizing the destruction and theft of mail. (*Id.*) Childs also believes that Neighbors "collu[ded]" with his former employer to interfere with legal process or service. (ECF No. 6, PageID.24.) Childs also apparently accuses Neighbors of wrongly denying his administrative claim about the misdelivered mail. (*See* ECF

10

No. 6, PageID.25, 30.) Childs references "fraud," too. (ECF No. 6, PageID.38; *see also* ECF No. 33, PageID.169.)

Childs believes that Neighbors' actions violated a number of laws. In his original complaint, which has been superseded, Childs cited provisions of the Federal Tort Claims Act, the First Amendment to the U.S. Constitution, 18 U.S.C. §§ 1703, 1709 (two criminal laws prohibiting the destruction and theft of mail), and Title VII of the Civil Rights Act of 1964. (ECF No. 1, PageID.3, 4.) In his amended complaint, which is the operative complaint, Childs alleges that Neighbors violated the First and Fourth Amendments when colluding with his former employer. (ECF No. 6, PageID.24.) In an exhibit, which appears to be part of the administrative claim, Childs lists various provisions of the Constitution and "fraud." (ECF No. 6, PageID.38.) Finally, in a proposed, second-amended complaint, Childs cites the Federal Tort Claims Act, the First and Fourth Amendments and *Bivens*, and 18 U.S.C. §§ 1703, 1709. (ECF No. 33, PageID.167.) The proposed complaint also references "fraudulent concealment" and "procurement fraud." (ECF No. 33, PageID.169.)

Childs' complaints do not show that Neighbors is liable under any of the laws Childs has referenced.

Start with the Federal Tort Claims Act. Although the United States has sovereign immunity, through the FTCA, the United States waived its sovereign immunity for certain tort claims. *See* 28 U.S.C. § 2674; *Does 1-10 v. Haaland*, 973 F.3d 591, 596 (6th Cir. 2020). But the FTCA also has an exclusivity provision

11

(sometimes referred to as the Westfall Act). In particular, for "injury or loss of property . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his . . . employment," the remedies against the United States provided by the FTCA are "exclusive" of any other suit "for money damages by reason of the same subject matter against the employee." 28 U.S.C. § 2679(b)(1). In other words, the exclusivity provision may permit Childs to sue the United States for money damages for Neighbors' acts but precludes Childs from suing Neighbors for money damages for Neighbors' acts. This exclusivity provision extends to state-law tort claims, which would include any state-law fraud claims Childs brings. *See Hockenberry v. United States*, 42 F.4th 1164, 1170 (10th Cir. 2022) ("Under 28 U.S.C. § 2679, commonly referred to as the Westfall Act, federal employees are absolutely immune from state-law tort claims that arise 'out of acts they undertake in the course of their official duties.'").

While not explicitly raised by the parties, the Court is aware that there are two exceptions to this exclusivity provision. But before examining those, the Court notes that the FTCA's exclusivity provision applies even if the FTCA itself does not permit recovery from the United States. As noted, the Court previously dismissed the United States and the United States Postal Service because of an FTCA exception. Namely, while the FTCA is a waiver of sovereign immunity, that waiver does not include "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). In other words, for

12

most mail-delivery claims, the FTCA is not a waiver of the United States' sovereign immunity. Thus, unless one of the two exceptions to the exclusivity provision applies, Childs cannot recover any damages: the FTCA's exclusivity provision says that he must seek monetary relief from the United States and not Neighbors, but the FTCA preserved the United States' sovereign immunity for claims "arising out of" most mail-delivery claims. *See United States v. Smith*, 499 U.S. 160, 166 (1991) (providing that the FTCA's exclusivity provision makes the FTCA "the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability").

What of the two exceptions to the FTCA's exclusivity provision? A plaintiff may sue a federal employee for money damages if (1) the claim is based on the U.S. Constitution or (2) the claim is for a violation of a federal statute that authorizes suit against the federal employee. *See* 28 U.S.C. § 2679(b)(2). Childs has not directed the Court to any federal statute that authorizes suit against Neighbors for the alleged misconduct. But Childs does cite provisions of the Constitution that Neighbors allegedly violated. So that exception to the exclusivity provision must be explored.

When a plaintiff seeks monetary relief from a federal employee for violating the U.S. Constitution, that claim is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the associated line of cases. A court asked to recognize a *Bivens* claim proceeds in two steps. It first asks whether the case presents "a new *Bivens* context." *Egbert v.*

13

*Boule*, — U.S. —, 142 S. Ct. 1793, 1797 (2022). If it does, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1803 (internal quotation marks omitted).

Here, step one is straightforward. The Supreme Court has only ever recognized three *Bivens* claims: a Fourth Amendment unreasonable-search-and-seizure claim, a Fifth Amendment sex-discrimination claim, and an Eighth Amendment inadequate-medical-care claim. *See Egbert*, 142 S. Ct. 1802. Childs' claims against Neighbors are nothing like those three. Childs says Neighbors concealed the identify of carriers who misdelivered his mail, covered up their criminal acts, wrongly adjudicated his administrative claim, and colluded with his former employer. Childs' claims plainly present a new *Bivens* context.

That means the Court proceeds to step two and asks if there are any special factors indicating that Congress is "at least arguably" better equipped than the courts to decide if Childs may recover for Neighbors' alleged misconduct. There are at least two such special factors, and likely more. For one, in enacting the FTCA, Congress preserved the United States' immunity for "[a]ny claim *arising out of* the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). "Arising out of" is broad language, so Congress may well have thought about, and declined to create liability for, claims similar to the ones Childs brings against Neighbors. Second, as alluded to throughout this opinion, there is an administrative process that Childs can (and apparently did) pursue. In particular,

Part 912 of the Code of Federal Regulations describes "Procedures to Adjudicate Claims for Personal Injury or Property Damage Arising Out Of Operation of the U.S. Postal Service." Under those procedures, "A claim for injury to or loss of property may be presented by the owner of the property." 39 C.F.R. § 912.6. A claimant can recovery money. 39 C.F.R. § 912.10. This administrative process further counsels against a court creating a cause of action for Childs' constitutional claims. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." (internal quotation marks omitted)). Given at least these two special factors, this Court will not create a cause of action for Childs' constitutional claims against Neighbors.

What has been said mostly justifies dismissing Childs' claims against Neighbors. But there are two loose ends to address.

First, Childs cites two laws criminalizing the destruction or theft of mail, 18 U.S.C. §§ 1703, 1709. But, in most cases, only prosecutors can enforce criminal laws, and Childs has not shown that § 1703 or § 1709 are the exception to that general rule.

Second, Childs asks for injunctive relief: he wants the Court to order Neighbors to disclose the mail carriers who misdelivered his mail. (ECF No. 6, PageID.26.) And what has been said so far does not address that request because the FTCA's exclusivity provision only extends to claims for damages, not injunctive

15

relief. *See* 28 U.S.C. § 2679(b)(1). But Childs has not directed the Court to any laws prohibiting Neighbors from refusing to provide this information, let alone that those laws would provide for the injunctive relief that Childs seeks.

### III.

Rather than filing a response brief to Neighbors' motion to set aside the default and to dismiss, Childs moves to strike Neighbors' motion. (ECF No. 34.) Childs' motion attacks the affidavits that Neighbors relies on. Childs claims they are defective or incomplete. (*See e.g.*, ECF No. 34, PageID.174, 177.) As to Frazette's affidavit specifically, Childs says that her explanation for signing the restricted-delivery card shows that she violated laws prohibiting the obstruction of mail delivery. (ECF No. 34, PageID.176.)

Childs' motion to strike will be denied. The Court sees no reason to disregard two basic facts in the affidavits: Neighbors was not working at the National Tort Center when Childs tried to serve him there, and Neighbors did not authorize Frazette or anyone else to accept service for him. Other than those two facts, the Court relied on little else in the affidavits. In any event, the affidavits pertain to service, and the Court has ruled in favor of Childs on that issue. Accordingly, Childs' motion to strike will be denied.

### IV.

That leaves Childs' proposed, second-amended complaint, and Neighbors' motion to strike it or, alternatively, dismiss it. (ECF Nos. 33, 35).

16

It appears that Childs' proposed, second-amended complaint is not in compliance with the Federal Rules of Civil Procedure. Rule 15(a)(1) does grant a plaintiff the right to file an amended complaint within 21 days of serving it or within 21 days of a Rule 12(b) motion. And Childs did file his proposed complaint within 21 days of Neighbors' Rule 12(b)(5) motion. (*Compare* ECF No. 30, *with* ECF No. 33.) Moreover, the Court only just now deemed Neighbors served. The problem for Childs, though, is the first part of Rule 15(a)(1): "A party may amend its pleading *once* as a matter of course . . . ." Childs already filed one amended complaint (ECF No. 6), so, arguably at least, Rule 15(a)(1) does not apply and Childs must instead resort to Rule 15(a)(2). *See U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 193 (1st Cir. 2015). But Rule 15(a)(2) requires Neighbors' agreement or the Court's permission. Neither of those happened here.

But the Court will assume without deciding that Childs' proposed, second-amended complaint is properly filed. The laws cited in that complaint are the FTCA, provisions of the Constitution, the two criminal statutes about mail, and fraud. (ECF No. 33, PageID.167, 169.) The Court has already explained why it must dismiss claims based on those laws. So assuming that Childs' second-amended complaint is properly filed, it is dismissed.

V.

For the reasons given,

- Neighbors' motion to strike or dismiss the proposed second-amended complaint (ECF No. 35) is GRANTED;

17

- Neighbors' motion to set aside the default (ECF No. 30) is GRANTED;

- Neighbors' motion to dismiss Childs' claims against him (ECF No. 30) is GRANTED—but only insofar as the motion is consistent with this opinion;

- Childs' motion for a default judgment (ECF No. 31) is DENIED;

- and Childs' motion to strike Neighbors' motion (ECF No. 34) is DENIED.

Childs' claims against Neighbors are DISMISSED. A separate judgment will follow.

SO ORDERED.

Dated: February 22, 2023

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE